## HILLIARD *v.* HILLIARD.

CONTRACTS—IMPLIED CONTRACT—CONVERSION.

> Where plaintiff left money lying about in the house of one of the defendants, in which the other, to whom plaintiff was affianced, was staying, and said first named defendant picking it up in jest, in plaintiff's presence, gave it to the other with some joking remark, he was not jointly liable with her after she had broken off with plaintiff and had married defendant's brother, in the absence of a conspiracy or intent to convert the funds.

Error to Eaton; Smith, J. Submitted January 16, 1912. (Docket No. 86.) Decided March 29, 1912.

Assumpsit in justice's court by Johnson Hilliard against Robert Hilliard and Kate Hilliard for money had and received. From a judgment for plaintiff, defendants

appealed to the circuit court. Judgment for plaintiff. Defendants bring error. Reversed.

*Joseph B. Hendee*, for appellants.

*G. Elmer McArthur*, for appellee.

OSTRANDER, J. The action originated in justice's court, where plaintiff declared orally in assumpsit and filed the following bill of particulars:

"The plaintiff's bill of particulars is for moneys taken from him by the said Robert Hilliard, and by the said Robert Hilliard delivered over to the said Kate Hilliard (then Kate Brandon). The said act of depriving the said plaintiff of the said moneys took place at the residence of the said Robert Hilliard; and the said plaintiff claims that the said moneys were so taken, and he so deprived thereof, against his will and consent, that the same was without consideration. The amount of moneys plaintiff was thus deprived of by defendants was, to wit, the sum of $50."

With the plea the defendants gave notice that, if any of plaintiff's money came into the hands of either defendant, it was the voluntary gift of plaintiff to defendant Kate Hilliard, formerly Brandon, and was used by her in a manner directed by plaintiff, with his knowledge and approval. In the circuit court the plaintiff gave testimony tending to prove that he came to America in 1905, had known defendant Kate in Ireland, had corresponded with her, and through correspondence became engaged to marry her. He sent her £10 to pay her expenses from Ireland to America. Upon her arrival he went with her to the home of defendant Robert, where Kate remained. A day or so after her arrival, plaintiff had some money which he was counting in the presence of Kate and Delia, the wife of Robert. For some reason he left it on a chair, Robert came into the room, picked it up, and handed it to Kate, saying, in substance, she may as well have it now, or may as well take care of it, or commence taking care of it, now. Kate took the money; plaintiff supposing

and treating it as a joke. There was $60. Next morning plaintiff asked Kate for the money, and she refused to give it to him, but did give him $10. Plaintiff went away and was gone two weeks. On his return he asked Kate what she did with the money, and she replied that she gave it to defendant Robert's wife. Plaintiff told her he expected it would be returned to him the next morning. He did not ask for it, however, and left in the morning for his work in Lansing. Later he received a letter from Kate, stating that she had married one Tom Hilliard, a brother of defendant Robert. The money was never returned to plaintiff.

"*Q.* Now, was the money, if there was any promise made by you later, was that in consideration of her marriage?

"*A.* Yes, sir.

"*Q.* Did you make any further promise after that, by letter or otherwise; that is, after the time they took this money?

"*A.* Did I make any promise? No. I wrote her a letter after I first went to Lansing, when they first took the money. I had no knowledge that she intended to break off her marriage promise with me at the time I wrote that letter."

This upon his direct examination. On cross-examination he said there was some talk after Kate arrived here about their getting married, taking place after plaintiff had made his first visit to Lansing and after the disposition of the money heretofore stated. He wrote a letter to Kate, from Lansing, after she had so taken his money, in which he said, among other things:

"Did you get your hat yet, be sure and get you a new dress and don't get a cheap rag, do not look to the money have all you want of it."

Interrogated concerning this letter, he said he did not know what money he referred to.

"*Q.* You referred to the money, did you not, that you gave to Kate Brandon?

"*A.* I guess so.
"*Q.* There at Robert's?
"*A.* Yes, sir; that is the money I referred to."

On the part of defendants, testimony was introduced, tending to prove that defendant Robert Hilliard, seeing the money in the chair, picked it up with a light remark, asking whom he should give it to, and was told by plaintiff to give it to Kate; that plaintiff then took more money from his pocket and gave it to Kate; that the money was used by Kate to repay a sum of money borrowed by her to pay for the passage to America—the plaintiff not having sent her a sufficient amount—and for clothing for herself. There is no testimony tending to prove that defendant Robert ever again saw or had the money or any benefit or advantage therefrom, and none tending to prove any arrangement or conspiracy or effort on his part to bring about the marriage of Kate and his brother Tom, or to prevent or interfere with a marriage between plaintiff and Kate. The court was requested to charge the jury that, upon the undisputed testimony, Robert Hilliard was not liable to plaintiff in this action, and a verdict in his favor should be returned.

The court charged the jury, in part, as follows:

"The plaintiff claims that it was secured of him by a plan on the part of the Hilliards to deprive him of the money and unlawfully, that is, without any consideration, to take it; it was a plan on the part of Robert Hilliard to pick up that money, and so manipulate the situation there that he could pass it over to Kate Brandon. I instruct you, as a matter of law, that if you believe from the evidence produced in this cause that the defendants deprived the plaintiff of his money unlawfully, and have not returned said money to the plaintiff, your verdict should be in favor of the plaintiff and against the defendants. By the defendants, I mean Robert Hilliard and Kate Hilliard now, formerly Kate Brandon. If you believe from the evidence produced that a plan was formed by the defendants to deprive the plaintiff of his money unlawfully, and the defendants did so deprive the plaintiff of his money, your verdict should be in favor of the plaintiff,

and against the defendants, to the amount found to be due plaintiff, not exceeding the amount claimed, with interest, which is $50, with interest thereon.   Gentlemen, if you believe from the evidence that the plaintiff and Miss Brandon were engaged to be married, and this $50 was given her in consideration of such engagement and her promise to marry him, if you find there was such a promise, and you further believe from the evidence that such promise thus made was not fulfilled by her, and she was responsible for its not being fulfilled, then plaintiff should recover this money."

Later on the court said:

"Now, gentlemen, as to Mr. Robert Hilliard, he is not here in court, and his deposition was taken.   I think he is ill; that is my remembrance of it.   But now as to his rights in the case, I charge you that before you can hold the defendant Robert Hilliard liable for money had and received in this action, it will be incumbent upon the plaintiff to establish, by a preponderance of the evidence, that at the time said Robert Hilliard picked up the money from the floor, as testified to by him, and handed the same over to Kate Brandon, now Kate Hilliard, it was with the intention and purpose on his part of converting the same to his own use, or for the purpose and intention of enabling the defendant Kate Brandon, now Kate Hilliard, to convert it to her own use, and that such action on the part of said Robert Hilliard was contrary to the orders and directions of said plaintiff.   I charge you that if you find from the evidence in this case that the defendant Robert Hilliard, as testified to by him, passed the money in question over to Kate Brandon, now Kate Hilliard, and that such action on the part of the said Robert Hilliard was in accordance with the request and direction of the plaintiff, Johnson Hilliard, so to do, then the defendant Robert Hilliard would in no way be liable to the plaintiff in this action, and as to the defendant and Robert Hilliard, should you so find, your verdict would be no cause of action."

A verdict was returned against both defendants.   A motion for a new trial was denied.   There is testimony, if it is believed, to support a verdict and judgment for some amount against defendant Kate Hilliard, but, as stated above, we find none which tends to prove the lia-

bility of defendant Robert Hilliard.    The request to charge
preferred should have been given.    The other errors assigned are not considered.

The judgment is reversed, and a new trial granted.

MOORE, C. J., and STEERE, McALVAY, BROOKE,
BLAIR, and STONE, JJ., concurred.    BIRD, J., did not sit.